AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Oklahoma

FILED
AUG 16 2025
Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 25-mj-704-MTS |
| | ) | |
| CHRISTIEN LAFRANCE | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 16, July 18, and August 15, 2025__ in the county of __Tulsa__ in the Northern District of Oklahoma, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C §§ 846 and 841(b)(1)(A)(viii) | Drug Conspiracy |
| 21 U.S.C §§ 841(a)(1) and 841(b)(1)(B)(viii) | Possession of Methamphetamine with Intent to Distribute |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Special Agent Wyatt Huffman, DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: 8-16-2025

City and state: Tulsa, OK

_____
Judge's signature

Mark T. Steele, United States Magistrate Judge
Printed name and title

## Affidavit in Support of an Arrest Warrant
## in the Northern District of Oklahoma

I, Wyatt Huffman, being duly sworn under oath, do hereby depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Drug Enforcement Administration, United States Department of Justice. As a result of my employment as a DEA Special Agent, my duties include, but are not limited to, the investigation and enforcement of Title 21 of the United States Code. I am an agent of the United States authorized by law to investigate violations of federal laws and make arrests for violations of those laws.

2. Before becoming a Special Agent with DEA, I completed a Bachelor of Science in Criminal Justice at Sam Houston State University in Huntsville, Texas. I also completed the DEA Academy in July 2024. During my studies at Sam Houston State University and the DEA Academy, I received instruction from professors and instructors with considerable experience investigating drug trafficking organizations globally. I have learned about different drug trafficking techniques and the methods and tactics that drug traffickers use to avoid detection and apprehension by law enforcement. During my career as a DEA Special Agent, as well as from my education, I have learned how people involved in distributing controlled substances maintain records of their distribution and conceal drug proceeds. I am familiar with the communication methods, including the use of cellular telephones and encrypted chat applications such as WhatsApp and Signal, that people involved in distributing

controlled substances use to coordinate smuggling, transporting, and distributing controlled substances, and to facilitate collecting drug proceeds. I am also familiar with coded language and slang terminology used in furtherance of those activities. During my career as a DEA Special Agent, I have used and become knowledgeable about various investigative techniques used to investigate drug trafficking organizations, including wire and electronic interceptions and other electronic surveillance methods, physical surveillance, undercover investigators and drug transactions, confidential sources and cooperating witnesses, controlled purchases of illegal controlled substances, consensually monitored recordings, trash searches, mail covers, search warrants, forensic extractions of cell phones seized from those involved in drug distribution, investigative interviews, administrative and grand jury subpoenas, and financial investigations.

3. The facts and statements in this affidavit are based in part on information provided by other law enforcement officers and on my personal observations and training and experience as a DEA Special Agent. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. It is my belief that CHRISTIEN LAFRANCE, DOB xx-xx-1970, SSN xxx-xx-3457 has violated 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii) [Conspiracy to Possess Methamphetamine with Intent to Distribute], in that between on or about July 16, 2025, and July 18, 2025, LAFRANCE and unindicted co-conspirator 1 (UCC1)

agreed that UCC1 would receive a package containing approximately 9,859.9 grams of methamphetamine via United Parcel Service to a location in the Northern District of Oklahoma on LAFRANCE's behalf. LAFRANCE would then collect the package from UCC1 in exchange for monetary compensation.

5. I also believe that based on the information described herein, LAFRANCE has violated 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii) [Possession of Methamphetamine with Intent to Distribute] on or about August 15, 2025.

## PROBABLE CAUSE

6. On July 16, 2025, DEA Special Agent K. Sanders received a phone call from UPS Security Investigator David P. Ortega, who advised her that the UPS Corporate Security Targeting Center Team contacted him for assistance in intercepting a package that they suspected contained controlled substances. The package's tracking number was 1Z92E3381295594998 and its destination address was a home in the Northern District of Oklahoma (hereafter "the Subject Parcel"). Investigators subsequently associated that address with unindicted co-conspirator (UCC1) as described below. The Subject Parcel was sent from Postal Plus, located at 3309 East Hillcrest Boulevard in Inglewood, California.

7. On July 17, 2025, DEA investigators were notified that the Subject Parcel was at a UPS Hub located at 5805 South 118th East Avenue in Tulsa. DEA investigators, Oklahoma Highway Patrol Trooper Short, and Trooper Short's narcotics detector dog "Rip" responded to the UPS Hub. Trooper Short advised that "Rip" has been in

3

service as a certified police narcotics detection dog since August 2023. According to Trooper Short, "Rip" holds an Oklahoma State certification number of 0136970-D004144 and is trained and certified to alert to the odors of heroin, cocaine, and methamphetamine. "Rip's" certification was administered by a State of Oklahoma Council on Law Enforcement Education and Training (CLEET) drug dog evaluator, certifying to Oklahoma's Canine Team standards. Per Trooper Short, he works regularly with "Rip," consistently and systematically verifying "Rip's" abilities to detect controlled substances.

8. At the UPS Hub, four boxes similar in size and the Subject Parcel were placed on the floor. Trooper Short ran "Rip" over the boxes and advised that "Rip" alerted (gave an odor response) on the Subject Parcel. An alert is an odor response indicating the odor of a controlled substance (heroin, cocaine, and/or methamphetamine) was emanating from the Subject Parcel. "Rip" did not alert on any of the other boxes. Trooper Short advised that based on "Rip's" alert, he believed the Subject Parcel contained illegal controlled substances.

9. On July 17, 2025, United States Magistrate Judge Christine D. Little signed a federal search warrant for the Subject Parcel. When investigators searched the Subject Parcel they determined it contained approximately 9,859.9 grams of a substance that agents recognized as physically consistent with methamphetamine. DEA investigators tested the substance using a TruNarc kit and received a presumptive positive result for the presence of methamphetamine.

4

10. On July 18, 2025, DEA investigators conducted a controlled delivery of the Subject Parcel to the destination address within the Northern District of Oklahoma that it was being shipped to. During the controlled delivery, investigators saw UCC1 take the Subject Parcel into the home. DEA investigators subsequently executed a federal anticipatory search warrant on the home and detained UCC1.

11. While DEA investigators searched the home, DEA TFO D. Brice and DEA Special Agent K. Sanders saw a gray Ford F150 bearing Oklahoma tag #JSS055 directly parked in front the driveway of the home. The vehicle was registered to CHRISTIEN LAFRANCE at 409 South Maple Street, Unit B, in Sapulpa, Oklahoma. After several minutes of the grey Ford F150 being directly parked in front the driveway of the home, DEA investigators approached the vehicle, contacted the white male driver, and identified him as CHRISTIEN LAFRANCE. LAFRANCE. CHRISTIEN LAFRANCE was the only occupant of the F150.

12. During the encounter, LAFRANCE asked investigators who they were and what they were doing at the home. LAFRANCE then said he was there to meet a landlord at the address to look at the property. LAFRANCE said he might have the wrong house. Special Agent K. Sanders asked LAFRANCE to see his cell phone to see who he was meeting and LAFRANCE quickly changed the subject. LAFRANCE then told investigators the house number associated with the address he was looking for. DEA investigators recognized the address LAFRANCE gave as the address investigators were searching (the destination for the Subject Parcel).


13. Special Agent K. Sanders asked LAFRANCE to looks at the Maps application or messages on his cell phone to confirm what address he was looking for. LAFRANCE refused. TFO D. Brice asked LAFRANCE for his driver's license, which LAFRANCE provided. LAFRANCE told investigators he would "get out of their hair." While looking at LAFRANCE's driver's license, DEA investigators noticed it pictured LAFRANCE and listed his address as 409 South Maple Street, Unit B, Sapulpa, Oklahoma 74066.

14. While DEA investigators spoke with LAFRANCE, other DEA investigators were interviewing UCC1 in a nearby vehicle.[1] During that interview, investigators showed UCC1 a photo of LAFRANCE's driver's license and UCC1 confirmed that LAFRANCE was the person who was supposed to pick up the Subject Parcel from the home. UCC1 said that LAFRANCE had picked up other packages at the home approximately twenty times.

15. During the interview with UCC1, he/she told investigators that he/she met LAFRANCE at a casino. After knowing each other for approximately five or six months, LAFRANCE told UCC1 that he needed a house to have packages that contained something "illegal" shipped to. UCC1 said that LAFRANCE told

---

[1] DEA investigators advised UCC1 that he/she could potentially be arrested and prosecuted in connection with receiving the Subject Parcel. UCC1 agreed to speak with DEA investigators in exchange for potential consideration related to his/her potential arrest and prosecution. However, investigators did not make any promises to UCC1.

him/her that he would call UCC1 on the day a package was due to arrive and advice UCC1 that a package was arriving. Then, LAFRANCE would come and collect the package and give UCC1 cash.

16. UCC1 showed DEA investigators text messages between he/her and LAFRANCE during the time frame of July 12, 2025, through July 17, 2025. From training and experience, investigators recognized those messages were consistent with LAFRANCE coordinating drug pick-ups from UCC1.

17. Based on the ongoing investigation involving the shipment of parcels containing controlled substance from California to the Northern District of Oklahoma, DEA investigators allowed LAFRANCE to leave the area and did not arrest him on July 18, 2025.

18. On August 13, 2025, United States Magistrate Judge Mark T. Steele of the Northern District of Oklahoma authorized federal search warrants for 409 South Maple Street, Unit B, in Sapulpa and a storage locker located in Tulsa that investigators associated with LAFRANCE during this investigation through records from the storage locker facility bearing LAFRANCE's name and home address (409 South Maple Avenue, Unit B, Sapulpa, Oklahoma).

19. On August 15, 2025, DEA investigators executed both search warrants. During the execution of the search warrant at 409 South Maple Avenue, Unit B, investigators encountered LAFRANCE and a woman later identified as B.K. During the search of Unit B, investigators found a large amount of United States currency

and approximately 207.6 of a substance consistent with methamphetamine. Field tests subsequently revealed that the substance was presumptively positive for methamphetamine. During the search of LAFRANCE's storage unit, investigators found digital scales, packaging materials, and approximately twenty-gallon bags containing crystal residue that field tested presumptively positive for methamphetamine. Based on my training and experience and the facts contained within this affidavit, I believe that LAFRANCE possessed the 207.6 grams of methamphetamine in Unit B to distribute them.

20. During a post-*Miranda* interview, LAFRANCE admitted that he lives at 409 South Maple Street, Unit B, in Sapulpa and has lived there since February 2023. He said that B.K. also lives in Unit B, but that she only possessed some clothing there and that everything else in the home belonged to him. LAFRANCE admitted that the Ford F150 bearing Oklahoma tag JSS055 was his vehicle. LAFRANCE also identified the keys for the F150 and a admitted to being the owner of the storage unit.

21. During the interview, LAFRANCE discussed the incident on July 18, 2025 where investigators saw him in his F150 outside UCC1's house during the controlled delivery of the Subject Parcel containing approximately 9,859.9 grams of methamphetamine. LAFRANCE admitted that on July 18, 2025, he was supposed to pay UCC1 for a package containing ten pounds of methamphetamine that he picked up from UCC1's house on a prior occasion. LAFRANCE also admitted that

8

he has been distributing methamphetamine since January 2024 and has sold a couple of pounds of methamphetamine per week for approximately one and a half years.

## CONCLUSION

22. Based on the information set forth in this affidavit, I submit there is probable cause to believe that CHRISTIEN LAFRANCE violated 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii) [Conspiracy to Possess Methamphetamine with Intent to Distribute] between on or about July 16, 2025 and July 18, 2025. I further submit there is probable cause to believe that CHRISTIEN LAFRANCE violated 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii) [Possession of Methamphetamine with Intent to Distribute] on or about August 15, 2025.

Respectfully submitted,

Wyatt Huffman
Special Agent
Drug Enforcement Administration

Subscribed and sworn before me and in my presence on this 16 day of August, 2025.

MARK T. STEELE
UNITED STATES MAGISTRATE JUDGE